INTERNATIONAL GENERAL ELECTRIC COMPANY OF PORTO RICO, Plaintiff and Appellant, *v.* PLÁCIDO COLÓN DELGADO ET AL., Defendants and Appellees.

No. 8584.   Argued April 2, 1943.—Decided November 16, 1943.

*James R. Beverley, R. Castro Fernández,* and *José López Baralt* for appellant.   *A. Aponte* and *F. R. Aponte* for appellees.

Mr. Acting Chief Justice Travieso delivered the opinion of the court.

This is an action of debt in which the complaint was dismissed and plaintiff was adjudged to pay the costs and $300 as attorney's fees.

The plaintiff, a domestic corporation, alleged in its complaint that the defendants, husband and wife, executed in its favor on November 16, 1932, a mortgage on a certain lot and house owned by them, as security for the sum of $3,100.93 due on a certain current account existing between them, with a balance at the above date in favor of the plaintiff for the aforesaid sum; and that on November 30, 1935, when the mortgage became due, the current account was liquidated with a balance in favor of the plaintiff amounting to $1,712.43, plus $128.90, as interest thereon, which the defendants failed to pay to the plaintiff although payment thereof had been demanded of them by the plaintiff.

In their answer the defendants admitted the execution of the mortgage deed but denied that the mortgage had been executed to secure any amount in excess of $2,500 and also denied that the mortgage was due or that it covered any balance in favor of the plaintiff. They likewise denied that any amount of the sum originally due to the plaintiff by defendant Plácido Colón, which was secured by mortgage, is unpaid. On the contrary, they alleged that the whole amount of the secured indebtedness, as well as the whole of the indebtedness of said defendant in November 1932, had been satisfied by several payments on account made to the plaintiff from November 19, 1932, to December of 1935.

They denied that the current account litigated upon had ever been liquidated and alleged on the contrary that in December 1935, the representative of the plaintiff J. Bonano called on defendant, Plácido Colón, and informed him that as the auditors of the firm were investigating the af-

fairs of the plaintiff, he desired of him to "O. K." the two statements of accounts submitted to him, one for $1,712.43 and another for $128.90. The defendant refused, because he was unable to determine the correctness of the two items, but Bonano begged him to sign them on his promise that he would return to him the two documents as soon as the auditors should finish their work, and Colón did so trusting the word of Bonano. He further alleged that the account, as could be estimated afterwards, was full of errors, interest thereon having been charged amounting to $472.42 which had not been agreed upon and payments on account in excess of $397 having been omitted.

They denied having accepted any liquidation of the capital or of the mortgage interest, or that payment had been demanded of them.

It appears from the record that the defendants proposed to the plaintiff a compromise to the effect that judgment should be rendered against them for $843.01, and that said proposal was not accepted by the plaintiff.

Jenaro Bonano, assistant secretary and auditor of the plaintiff, was called to the stand at the trial. Upon a document being shown to him he said: "This is a statement of account of Mr. Plácido Colón of Humacao, reported on December 31, 1935, which shows a balance in favor of the company amounting to $1,712.43." It came into his hands "in the ordinary course of mail." He knows the signature which is authenticated. He recognizes the copy of the letter of December 11, 1935, inclosing the statement of account. He explains that there were two statements of account. The date of December 31, 1935, which appears in the statement of account, is that of its receipt.

The statements of account and the copy of the letter were offered in evidence and admitted. The letter written to Colón and dated December 11, 1935, says:

"Owing to the fact that we are expecting the visit of one of the auditors from our main office I wish to have your account made clear before the arrival of the above gentleman and I beg to inclose herewith two statements of account: one covering your current account, that is, $1,712.43 up to November 30, and another for the sum of $379.55 which covers the drafts which you subscribed and which are pending collection through the Roig Commercial Bank. I am also inclosing herewith two statements for interest which we have failed to charge to your account as from December 31, 1934, to November 30, 1935, which together amount to $128.90.

"You would greatly oblige us by keeping the duplicates of the above documents and returning to us the original of each of them with your approval."

The witness went on testifying and, in his answers to questions from the attorney for the plaintiff, denied having met Colón personally in order to arrive at a liquidation of the account. It was past six o'clock in the afternoon and the judge said: "We are going to set another day for cross-examination. The court will set the date for the resumption of this trial."

About two months afterwards, on June 24, 1940, the trial was resumed. The attorney for the plaintiff stated that he rested. The attorney for the defendants explained that he would not, that witness Bonano was on the stand and that cross-examination was not over. The judge ordered the witness to be summoned. The plaintiff informed that he could not appear as he was away from the island. The defendants insisted that they held "credit memoranda" amounting to $5,615.13 pending acknowledgment. The judge suggested that their authenticity might be admitted by the plaintiff, to which the defendant answered: "There are some of these memoranda, your Honor, held by us, which we have not with us and which we wish to submit to Mr. Bonano personally, because it is one of the means which we had to surprise Bonano. We will submit them to the court, we are not going to surprise him."

The court adjourned so that the parties might agree. At two o'clock in the afternoon the case was called and defendants stated:

"Your Honor, we handed the papers in this case, in accordance with the suggestion of the court, to the other party. We were together for about half an hour and finally what the other party did was to look at all our papers, adding items, taking down notes, seeing my evidence, and we had to refuse, because the purpose was merely to see whether those documents were authentic."

Several statements from the attorneys followed and, in spite of the suggestion from the court to mark everything that was admitted, the transcript is so confused that we can not conclude with certainty whether anything was or was not finally admitted. At this stage, the confusion increasing, the plaintiff stated through its counsel: "Your Honor, in order to be on the same level as the opposite party regarding the situation in which we were placed by the testimony of Mr. Bonano, we are going formally to waive such testimony."

The defendants objected. A discussion ensued which fills several pages of the record and in the course thereof the attorney for the plaintiff said: "Your Honor, we will admit that the documents were delivered by Bonano, from a gentleman to another, and that Mr. Colón signed them as from a gentleman to another. We will admit this as a fact and that the same had not been forwarded by mail."

We think that the judgment appealed from should be reversed and a new trial ordered for the following reasons:

██ It is a fact in the present case that the trial was held before a judge who had an opportunity to see the witnesses and hear their testimony, and that the judgment was rendered by another who had no such opportunity. This court, therefore, finds itself facing a situation similar to that of the trial judge in order to weigh the evidence and settle any conflict that might arise therefrom. After a careful

consideration of the evidence as a whole, a serious conflict arises between the testimony of Jenaro Bonano, the star witness for the plaintiff, and the testimony of defendant Plácido Colón. The testimony of Alberto Burgos, a rebuttal witness, does not aid at all in the solution of the conflict, inasmuch as he contradicts and controverts that part of Bonano's testimony where he emphatically denied having met the defendant, and, on the other hand, he differs from Colón as to the misrepresentations and promises which, according to Colón, Bonano made to him in order to get his acceptance of the accounts.

The trial judge decided the conflict in favor of the defendant whose testimony he fully believed, refusing to believe the testimony of the witness for the plaintiff. A majority of this court is of the opinion that the trial judge erred in weighing the evidence and, therefore, a reversal of the judgment appealed from lies. The court unanimously holds the opinion that it would not be fair to render a new judgment in favor of the plaintiff and against the defendant, inasmuch as the latter was deprived of his right to cross-examine the witness Bonano. All the above exceptional circumstances and the state of confusion arising from the record have led this court to the conclusion that the proper and fair course is to reverse the judgment and to remand the case to the court of origin for the holding of a new trial.

Nothing of what is herein decided must be considered or construed as an alteration of the rule that a case tried before a judge can and must be decided by another where the circumstances provided for in Rule 63 of the Rules of Civil Procedure concur. Had the above rules been in force at the time this case was decided, it might have been within the discretion of the lower judge to grant a new trial, pursuant to the provision of the fourth paragraph of the aforesaid Rule 63.